UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

RODOLPHE NOGBOU,

                Plaintiff,          07 Civ. 3763

   -against-                 <u>OPINION</u>

POLICE OFFICER MAYROSE, POLICE
OFFICER LORE, POLICE OFFICER
RIGALOS, BELLEVUE HOSPITAL
CENTER'S PSYCHIATRIC SERVICES,

              Defendants.

------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/15/09

      <u>Pro Se</u>

      RODOLPHE NOGBOU
      Clinton County Correctional Facility
      P.O. Box 419
      McElhattan, PA 17748

      <u>Attorneys for Defendants</u>

      MICHAEL A. CARDOZO
      Corporation Counsel of the
        City of New York
      100 Church Street, Room 3-221
      New York, NY 10007
      By: Sumit Sud, Esq.

**Sweet, D.J.**

Defendants Police Officers Mayrose ("Officer Mayrose"), LoRe ("Officer LoRe"), Rigalos ("Officer Rigalos") and Bellevue Hospital Center's Psychiatric Services ("Bellevue Hospital") (collectively the "Defendants") have moved under Rule 12(c), Fed. R. Civ. P., to dismiss the complaints of the plaintiff Rodolphe Nogbou ("Nogbou" or the "Plaintiff"), pro se, presumably brought under 42 U.S.C. § 1983. On the conclusions set forth below, the motion is granted and the Complaints dismissed.

This action concerns the unhappy interactions between Nogbou, a homeless man, and the society as represented by Defendants. It is, however, an inappropriate vehicle to address the very real social issues presented by Nogbou's condition and conduct.

## I.  PRIOR PROCEEDINGS

Nogbou filed his first complaint with attachments (the "First Complaint") on May 14, 2007, alleging claims against Officers Mayrose, LoRe and Rigalos and Bellevue

1

Hospital.[1]  Defendants answered the First Complaint on
October 10, 2007.

On October 2, 2007, Nogbou filed his second
complaint with attachments (the "Second Complaint")
alleging claims against Officers LoRe, Judge Richard
Weinberg ("Judge Weinberg") and Midtown Community Court.[2]
On October 2, 2007, the Honorable Kimba M. Wood dismissed
the Second Complaint as to Judge Weinberg and the Midtown
Community Court.  The case was assigned to this Court on
October 23, 2007.

On March 18, 2008, the First and Second
Complaints were consolidated for all purposes.  In
response, Nogbou filed an application setting forth his
version of the claims set forth in both Complaints.

The instant motion to dismiss was filed on May
30, 2008, and marked fully submitted on December 15, 2008.

## III.  ALLEGATIONS

---

[1] The First Complaint was filed under Civil Docket Number 07 Civ. 3763.
[2] The Second Complaint was filed under Civil Docket No. 07 Civ. 8515.

The following allegations, taken from the First and Second Complaints and Plaintiff's "Brief Response to the Defendants' Counsel's First Letter to the Plaintiff,"[3] dated March 31, 2008, are accepted as true for the purpose of resolving this motion.

Both Complaints appear to allege that on February 13, 2007, while Nogbou was asleep in a cardboard box outside 24 East 41st Street and Madison Avenue, he was approached by Officers Mayrose and Rigalos, who proceeded to kick off the cardboard box, thrusting Plaintiff into the "open in the freezing temperatures." First Complaint ¶ 44. Officers Mayrose and Rigalos told Nogbou he was not allowed to sleep on the street, and when Plaintiff refused to leave, he was handcuffed. Two minutes after Plaintiff's arrest, an ambulance arrived on the scene to transport him to Bellevue Hospital. Nogbou initially refused to enter the ambulance, believing that Officers Mayrose and Rigalos were engaged in a "kidnapping scheme." Id. at ¶¶ 51-52.

---

[3] Because Plaintiff is proceeding pro se, the Court considers his supplemental materials on this motion to dismiss. See Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) ("Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.").

While being placed in the ambulance, Nogbou "demanded to take his properties with him," but his request was denied.  Id. at ¶¶ 53—55.

Nogbou was taken to Bellevue Hospital's psychiatric center, at which point he informed the staff that Officers Mayrose and Rigalos were "trying to force" him to undergo certain "medical applications."  Id. at ¶ 60.

Following Nogbou's subsequent release from Bellevue Hospital, he returned to the site of his arrest to find several personal items missing from his belongings. He called 911 to request that a New York Police Department supervisor come to the scene to explain the actions of Officers Mayrose and Rigalos and the missing property. After arriving at the scene, a supervisor informed Nogbou that the Department of Sanitation had picked up his belongings during his absence.

On February 27, 2007, Nogbou again was sleeping in a cardboard box on the street when he was approached by Officers Mayrose and LoRe.  Plaintiff alleges that the box was again kicked off of him while he was inside and that he

4

was dragged out from under the box into freezing temperatures and ordered to leave.  Nogbou was handcuffed, placed in an ambulance, and transported to Bellevue Hospital for psychiatric services.  After Plaintiff refused to get onto a bed at Bellevue Hospital, he was physically restrained, tied down, and injected him with "some substance."  Id. at ¶¶ 115-19.

Bellevue Hospital's records from Nogbou's February 27, 2007 visit indicate that upon arrival, Plaintiff appeared "agitated," "aggressive" and was "uncooperative" with the medical staff.  See Bellevue Medical Records from February 27, 2007 ("February 27 Records"), Sud Decl., Ex. G.[4]  Nogbou presented with what the doctors diagnosed as "paranoid ideation" and exhibited "agitated and potentially assaultive" behavior.  Id. Nogbou's behavior caused the staff to place him in wrist and ankle restraints, and, after being injected with Haldol 5/Ativan 2, an anti-psychotic drug, he became more cooperative.

---

[4] Because the February 27 Records were attached to Plaintiff's First Complaint, the Court may consider them as part of the pleadings for purposes of the instant motion to dismiss.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) ("For purposes of [a motion to dismiss], the complaint is deemed to include any written instrument attached to it as an exhibit or any statement or documents incorporated into it by reference." (internal quotations and citation omitted)).

According to Nogbou, his entire medical history as related to the February 27, 2007 visit to Bellevue Hospital is a "premeditated planting of falsified psychiatric history evidence in the plaintiff's civil record" by Officers Mayrose and LoRe.  First Complaint ¶ 151.

Following Nogbou's discharge from Bellevue Hospital on February 27, 2007, he went directly to the 14th Precinct at 357 West 35th Street, New York, New York, to claim his property that had been left on the sidewalk when he was taken to Bellevue.  At the precinct, Plaintiff engaged in an "aggressive verbal exchange" with unknown police officers, and was informed that his belongings were at a "police depot in Long Island" and not at the precinct. Id. at ¶¶ 157-58.  Nogbou was aggressively escorted out of the precinct by Officer LoRe and, once outside, was allegedly assaulted by Officer LoRe, who "wrestled the plaintiff down" to the ground, and, along with other police officers, "started punching the face of plaintiff."  Id. at ¶ 164.

6

Nogbou was subsequently arrested and charged with Disorderly Conduct, N.Y. Penal Law § 240.20, and Resisting Arrest, N.Y. Penal Law § 205.30. Plaintiff was appointed a Legal Aid Attorney, and on February 28, 2007, he pled guilty to Disorderly Conduct before the Honorable Richard M. Weinberg and was sentenced to three days of community service and a session of individual counseling.

Nogbou has also alleged that the criminal complaint was fabricated and that Officer LoRe and Judge Weinberg conspired to falsely implicate Plaintiff and force him to plead guilty.

On May 7, 2007, Nogbou sought to withdraw his guilty plea. On June 8, 2007, Judge Weinberg denied his motion. Plaintiff subsequently filed a Notice of Appeal.

Nogbou has further alleged that Defendants intentionally deprived him of his "lifetime intellectual property," and seeks to recover "monetary reparation" in the amount of "500 billion dollars per year for 100 years." First Complaint ¶¶ 213-18.

## III.  THE RULE 12(c) STANDARD

7

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citing Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005)). In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers, 282 F.3d at 152 (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). However, mere "conclusions of law or unwarranted deductions of fact" need not be accepted. First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (quotations and citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . .'" Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"

8

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.
of N.Y., 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler
v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  However,
"[t]o survive dismissal, the plaintiff must provide the
grounds upon which his claim rests through factual
allegations sufficient 'to raise a right to relief above
the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar
Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

      In addressing the present motion, the Court is
mindful that Nogbou is proceeding pro se.  "Since most pro
se plaintiffs lack familiarity with the formalities of
pleading requirements, [courts] must construe pro se
complaints liberally, applying a more flexible standard to
evaluate their sufficiency than [they] would when reviewing
a complaint submitted by counsel."  Lerman v. Bd. of
Elections in the City of N.Y., 232 F.3d 135, 139-40 (2d
Cir. 2000).  However, "pro se status 'does not exempt a
party from compliance with relevant rules of procedural and
substantive law,'" Triestman v. Fed. Bureau of Prisons, 470
F.3d 471, 477 (2d Cir. 2006) (quoting Traguth v. Zuck, 710
F.2d 90, 95 (2d Cir. 1983)), and the "duty to liberally
construe a plaintiff's complaint is not the equivalent of a

9

duty to re-write it for him." _Joyner v. Greiner_, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002).


## IV.  DISCUSSION


### A.  **The False Arrest Claim is Dismissed**


To the extent the First and Second Complaints allege a claim for false arrest and/or unreasonable search and seizure under the Fourth Amendment, the claims fail as a matter of law.[5]  A seizure occurs for Fourth Amendment purposes when, "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" _Kia P. v. McIntyre_, 235 F.3d 749, 762 (2d Cir. 2000) (quoting _United States v. Mendenhall_, 446 U.S. 544, 554 (1980)). Accordingly, Nogbou was "seized" within the meaning of the Fourth Amendment when he was handcuffed and transported to Bellevue Hospital on February 13, 2007, and February 27, 2007, as well as when he was arrested at the 14th Precinct following his release from Bellevue on February 27, 2007.

---

[5] Although Nogbou has stated in his opposition to the instant motion that he is not alleging a false arrest, malicious prosecution or unlawful search and seizure claim, in light of his pro se status, the Court will nevertheless address each of these claims on the merits.

10

In both the arrest and the involuntary
hospitalization contexts, an officer is not liable under
the Fourth Amendment if he or she had probable cause to
believe that the seized individual was committing an
offense or was a danger to himself or others. See Illinois
v. Gates, 462 U.S. 213, 241-46 (1983); United States v.
Ceballos, 812 F.2d 42, 50 (2d Cir. 1987); Anthony v. City
of N.Y., 339 F.3d 129, 137 (2d Cir. 2003) ("A warrantless
seizure for the purpose of involuntary hospitalization 'may
be made only upon probable cause, that is, only if there
are reasonable grounds for believing that the person
seized' is dangerous to herself or to others." (quoting
Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993))); Kerman v.
City of N.Y., No. 96 Civ. 7865 (LMM), 1999 WL 509527, at *6
(S.D.N.Y. July 19, 1999) ("New York law allows a police
officer to 'take into custody any person who appears to be
mentally ill and is conducting himself or herself in a
manner which is likely to result in serious harm to the
person or others.'" (quoting N.Y. Mental Hyg. L. § 9.41))
(rev'd in part on other grounds).

Probable cause exists "when the arresting officer
has 'knowledge or reasonably trustworthy information
sufficient to warrant a person of reasonable caution in the

11

belief that an offense has been committed by the person to
be arrested.'" Singer v. Fulton County Sheriff, 63 F.3d
110, 119 (2d Cir. 1995) (quoting O'Neill v. Town of
Babylon, 986 F.2d 646, 650 (2d Cir. 1993)). The existence
of probable cause must be determined on the basis of the
totality of the circumstances. Gates, 462 U.S. at 230-32.


        Based on the totality of the circumstances,
Officers Mayrose, LoRe, and Rigalos were, as a matter of
law, reasonable in their belief that Nogbou posed a danger
to himself when they encountered him sleeping outside on a
frigid night and he refused to proceed to a shelter.
Nogbou's Complaints describe the "freezing temperature[s],"
on both evenings as well as his refusal to leave the
cardboard box. First Complaint ¶¶ 44, 95. Preventing
Plaintiff from causing serious harm to himself constituted
a reasonable basis for seizing Nogbou and transporting him
to Bellevue Hospital on both evenings.


        With respect to Nobgou's arrest at the 14th
Precinct following his release from Bellevue Hospital on
February 27, 2007, his claim for false arrest must also
fail. "[I]n order to recover damages for allegedly

12

unconstitutional convictions or imprisonment, or for other
harm caused by actions whose unlawfulness would render a
conviction or sentence invalid, a § 1983 plaintiff must
prove that the conviction or sentence had been reversed on
direct appeal, expunged by executive order, [or] declared
invalid by a state tribunal authorized to make such
determination . . . ."   Heck v. Humphrey et al., 512 U.S.
477, 486-87 (1994).  In the instant matter, Nogbou pled
guilty to Disorderly Conduct in connection with the
February 27, 2007 incident.  His request to withdraw his
guilty plea was denied.  Though Plaintiff is now in the
process of appealing that decision, to date his conviction
has not been reversed, expunged or declared invalid by any
state tribunal as required by Heck.  As such, Nogbou is
precluded from alleging false arrest or wrongful
imprisonment stemming from his February 27, 2007 arrest and
subsequent detention.

**B.    The Malicious Prosecution Claim is Dismissed**

Nogbou's Complaints can also be construed to
allege a claim for malicious prosecution.  To state a claim
of malicious prosecution under § 1983, Nogbou must show:
"(1) that the defendant commenced or continued a criminal

13

proceeding against him; (2) that the proceeding was
terminated in the plaintiff's favor; (3) that there was no
probable cause for the proceeding; and (4) that the
proceeding was instituted with malice." Kinzer v. Jackson,
316 F.3d 139, 143 (2d Cir. 2003).

As discussed above, Nogbou's guilty plea and
subsequent conviction for Disorderly Conduct stemming from
the February 27, 2007 arrest is not a favorable termination
in Plaintiff's favor.  A "[f]avorable termination is not so
much an element of a malicious prosecution claim as it is a
prerequisite to commencement of the action." Janetka v.
Dabe, 892 F.2d 187, 189 (2d Cir. 1989).  In light of
Nogbou's failure to allege a favorable termination, his
malicious prosecution claim must be dismissed.

### C.    The Claim for Deprivation of Property Is Dismissed

Nogbou alleges that on February 13, 2007, and
February 27, 2007, he was deprived of his property when he
was forced to abandon his possessions in the street.
Although some of Plaintiff's property was returned to him
following both incidents, several items were never

14

returned.  Despite this loss, however, Nogbou has not
stated a § 1983 claim for deprivation of property.

"Deprivation of property by a state actor,
whether intentional or negligent, does not give rise to a
claim under § 1983 so long as the law of that state
provides for an adequate post-deprivation remedy and the
deprivation was the result of a 'random and unauthorized'
act."  Dove v. City of N.Y., No. 99 Civ. 3020 (DC), 2000 WL
342682, at *2 (S.D.N.Y. Mar. 30, 2000).

Plaintiff has not alleged that the deprivation of
his property was the result of any "established state
procedures," as opposed to a "random and unauthorized" act
by Defendant Officers.  See Butler v. Castro, 896 F.2d 698,
700 (2d Cir. 1990).  Further, post-deprivation remedies are
available under New York law "in the form of state law
causes of action for negligence, replevin, or conversion."
Dove, 2000 WL 342682, at *2.  Accordingly, Nogbou's failure
to avail himself of all available state remedies prior to
bringing his § 1983 claim requires dismissal of his claim
for deprivation of property.

**D.    The Excessive Force Claim Is Dismissed**

15

Assuming that Nogbou has also pled an "excessive force" claim, this claim is also dismissed.  A claim for excessive force in the context of a seizure is analyzed under the Fourth Amendment to determine if the use of force was objectively reasonable.  See Scott v. Harris, 550 U.S. 372, 381 (2007).  An officer's "application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'"  Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).

However, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment," Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), and several courts in this Circuit have required plaintiffs to allege more than a de minimis use of force to succeed on their excessive force claims.  See Zhao v. City of N.Y., No. 07 Civ. 3636 (LAK), 2009 WL 3047253, at *14 n.10 (S.D.N.Y. Sept. 23, 2009); Smart v. City of N.Y., No. 08 Civ. 2203 (HB), 2009 WL 862281, at *7

16

(S.D.N.Y. Apr. 1, 2009); Williams v. City of N.Y., No. 05
Civ. 10230 (SAS), 2007 WL 2214390, at *7, *11 & n.175
(S.D.N.Y. July 26, 2007).

Here, Plaintiff's allegations establish that the
force used by Defendant Officers was de minimis and
therefore does not state a claim for excessive force.
First, Nogbou has alleged that on February 13, 2007,
Officers Mayrose and Rigalos kicked the cardboard box where
Plaintiff was sleeping, "landing blows in the body of the
plaintiff," First Complaint ¶ 44, dragged him onto the
street and placed him in handcuffs which are alleged to
have been too tight for two minutes before the ambulance
arrived on the scene.  Nogbou then struggled with Defendant
Officers while refusing to enter the ambulance, insisting
that he be allowed to bring his property with him.
Similarly, Nogbou has alleged that on February 27, 2007,
Officers Mayrose and LoRe kicked the boxes he was sleeping
in and again dragged him out into the cold.  Once again
Nogbou refused to leave and an ambulance was called to
transport him to Bellevue Hospital.  Nogbou was handcuffed
for one minute before the ambulance arrived and transported
him to the hospital.  Nogbou has further alleged that

17

Officer Mayrose "violently push[ed]" him into the
ambulance.  Id. at ¶ 103.


       Following both incidents, Nogbou was taken to
Bellevue Hospital where he was examined by a member of the
Hospital's staff.  The medical records from February 13,
2007, state that Nogbou denied "any medical complaint" or
injury following his encounter with Officers Mayrose and
Rigalos.  Bellevue Medical Records from February 13, 2007,
Sud Decl., Ex. F.  The medical records from February 27,
2007, state that upon arrival at Bellevue Hospital, Nogbou
was "highly agitated and threatening" and "uncooperative."
February 27 Records, Sud Decl., Ex. G.  These records
support Defendants' contentions that Nogbou suffered no
injuries as a result of any use of force on these
occasions, as well as the fact that Nogbou was behaving in
an aggressive and combative manner necessitating the
application of a minimal amount of force to restrain
Plaintiff until he reached Bellevue Hospital.  Accordingly,
Nogbou's excessive force claim in connection with these
incidents is dismissed.


       With respect to Nogbou's allegations that Officer
LoRe aggressively escorted him out of the 14th Precinct and

                              18

assaulted him, the claim must also fail.  As alleged,

Office LoRe "wrestled the plaintiff down and the other

police officers joined in, and started punching the face of

the plaintiff."  First Complaint ¶ 164.  However, Nogbou

was charged with Disorderly Conduct and Resisting Arrest as

a result of the incident described, and ultimately pled

guilty to the Disorderly Conduct charge, demonstrating that

probable cause existed to arrest Nogbou for his conduct

outside of the precinct.  Aside from Plaintiff's allegation

that he was punched by the Officers, he alleges no injury,

nor any additional facts that would establish that LoRe's

use of force was unreasonable under the circumstances.

Accordingly, any claim construed from the Complaints

alleging excessive force stemming from the altercation

outside the 14th Precinct on February 27, 2007, is also

dismissed.


###    E.    The Claim Agaist Bellevue Hospital Is Dismissed


Plaintiff's Complaints can also be read to allege

a claim against Bellevue Hospital for medical malpractice.

However, Bellevue Hospital, a facility belonging to the New

York City Health and Hospitals Corporation ("HHC"), is not

a suable entity.  While HHC has been granted the capacity

to be sued under state law, N.Y. Unconsol. L. § 7385(1), no
such exception to the New York City Charter exists with
respect to Bellevue Hospital.     See N.Y. City Charter Ch.
17, § 396 ("[A]ll actions and proceedings for the recovery
of penalties for the violation of any law shall be brought
in the name of the City of New York and not in that of any
agency, except where otherwise provided by law."); see also
Ayala v. Bellevue Hosp., No. 94 Civ. 1551 (WHP), 1999 WL
637235, at *3 (S.D.N.Y. Aug. 20, 1999).  Accordingly, any
claim against Bellevue Hospital is dismissed.

### F.    The Claim for Conspiracy Is Dismissed

"In order to survive a motion to dismiss, a §
1983 conspiracy pleading must allege (1) an agreement; (2)
joint action causing constitutional injury; and (3) an
overt act committed in furtherance of the conspiracy."
Coakley v. 42nd Precinct Case 458, No. 08 Civ. 6209 (JSR),
2009 WL 3095529, at *4 (S.D.N.Y. Sept. 28, 2009)(citing
Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d
Cir. 2002)).  The essential element is an agreement to
deprive a plaintiff of his constitutional rights.  See
Nat'l Cong. for Puerto Rican Rights v. City of N.Y., 75 F.
Supp. 2d 154, 168 (S.D.N.Y. 1999) ("Without [] a meeting of

20

the minds, the independent acts of two or more wrongdoers
do not amount to a conspiracy." (internal quotation and
citation omitted)).  A pro se complaint "containing only
conclusory, vague, or general allegations of conspiracy to
deprive a person of constitutional rights cannot withstand
a motion to dismiss."  Zemsky v. City of N.Y., 821 F.2d
148, 151 (2d Cir. 1987) (quoting Sommer v. Dixon, 709 F.2d
173, 175 (2d Cir. 1983)).

        Although Nogbou asserts that the officer
defendants and Judge Weinstein, against whom Plaintiff's
claims have been previously dismissed, conspired to
fabricate evidence, he does not allege any facts detailing
the alleged conspiracy.  Because Nogbou's allegations are
conclusory and do not describe in any detail an agreement
reached among Defendants to deprive Plaintiff of his
constitutional rights, any conspiracy claims must also be
dismissed.

    **G.    The Court Declines to Exercise Supplemental
           Jurisdiction Over Plaintiff's Assault Claim**

        In his opposition to the instant motion,
Plaintiff states that the Complaints state a claim for

21

assault, based on "the plain repetitive punching[s] of the face of the Plaintiff without cause."  Pl. Revised Opp. ¶ 27.


To the extent Nogbou has pled a cognizable claim for assault under state law — an issue which the Court does not address here — the Court "may, at its discretion, exercise supplemental jurisdiction over [those claims] even where it has dismissed all claims over which it had original jurisdiction . . . ."  Parker v. Della Rocco, 252 F.3d 663, 666 (2d Cir. 2001) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). The statutory authority for the exercise of such supplemental jurisdiction is found in 28 U.S.C. § 1367(c)(3), according to which a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction," as is the case here.  Id. (emphasis added).


In exercising this discretion, a district court "balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to

22

exercise jurisdiction." <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006) (internal quotations and citation omitted). In addition, the court is aided by the Supreme Court's guidance in <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343 (1988): "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." <u>Id.</u> at 350 (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726-27 (1966)).

In light of its dismissal of all of Plaintiff's federal law claims at this early stage of the case, the Court declines to exercise supplemental jurisdiction over Nogbou's state law claim for assault.


**V.    LEAVE TO AMEND THE FIRST COMPLAINT IS DENIED**

In Plaintiff's Revised Opposition to the instant motion, he appears to cross-move to amend his First Complaint to substitute "Thomas Birch R.N., Clorence Hontiveros R.N., Loreat Ompok R.N., Greenberg Eli, M.D., and Calienta Loreta R.N." for "Bellevue Hospital

Psychiatric Services" as defendants.  Nogbou alleges that
the proposed defendants "deliberately disregarded and
violated law known to them, subjected the plaintiff to some
medical application against plaintiff's will, against
plaintiff's consent, and out of need, without cause."  Pl.
Rev. Opp. ¶ 37.

After being served with a responsive pleading, a
party may amend its pleading "only with the opposing
party's written consent or the court's leave."  Fed. R.
Civ. P. 15(a)(2).  Leave to amend a complaint pursuant to
Rule 15 should not be denied unless there is evidence of
undue delay, futility, bad faith, or undue prejudice to the
non-movant.  See Foman v. Davis, 371 U.S. 178, 182–83
(1962); Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d
Cir. 2001).

Nogbou's allegations against the proposed
defendants amount to claims of negligence or medical
malpractice.  Such claims are not actionable pursuant to §
1983, and therefore would not state a claim under federal
law.  See Benjamin v. Galeno, 415 F. Supp. 2d 254, 256
(S.D.N.Y. 2005) ("Malpractice claims cannot be brought
under Section 1983, because they sound in negligence, and

24

mere negligence does not rise to the level of a constitutional tort.").

To the extent Plaintiff alleges state law claims for medical malpractice and/or negligence against the proposed defendants, the Court declines to exercise supplemental jurisdiction over those state law claims for the reasons discussed above.

Accordingly, the motion to amend would be futile and is denied.

**CONCLUSION**

The motion of the Defendants is granted, the cross motion to amend the First Complaint is denied and the Complaints are dismissed without prejudice.

It is so ordered.

**New York, N.Y.**
**October   14 , 2009**

ROBERT W. SWEET
U.S.D.J.

25